IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY MCANDREW           :

    Plaintiff,          : Case No. 3:11-CV-1727

v.                         :

DELAWARE & HUDSON RAILWAY COMPANY
INC. d/b/a CP RAIL SYSTEM  : (Judge Richard P. Conaboy)

    Defendant.          :

**MEMORANDUM**

We consider here a Motion for Summary Judgment (Doc. 22) filed by Defendant Delaware & Hudson Railway Company, Inc. ("Defendant") on January 4, 2013. With this Motion, Defendant seeks judgment in its favor on Count I of Plaintiff's Complaint (Doc.1), a "Traumatic Federal Employers' Liability Claim" pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51. [1] For the reasons discussed below, we conclude that Defendant's Motion for Summary Judgment must be denied.

**I. Background.**

Plaintiff initiated this action on September 16, 2011 by Complaint alleging that as an employee of the Defendant, a railroad company, it owed him a duty under FELA to provide him with

---

[1] Plaintiff's Complaint, as originally structured, had contained a second count characterized as a "Repetitive Stress Claim". On December 11, 2012, Count II was dismissed with prejudice in accord with a Stipulation by the parties. (Doc. 20).

1

reasonably safe working conditions. (Doc. 22, ¶ 1; Doc. 24, ¶ 1). Plaintiff's Complaint alleges further that Defendant breached this duty and thereby caused him to fall while working in an area of Defendant's premises in "allegedly unsafe walking conditions". (Id.). At the time of the accident giving rise to this lawsuit, Plaintiff was employed by the Defendant as a trainman and conductor and had been so employed for 18 years. (Doc. 1, ¶ 5; Plaintiff's Statement of Additional Facts in Dispute, Doc. 24, ¶ 1 ).

On February 21, 2010, while working as a conductor on a yard crew that was in the process of "making up a train" in the Defendant's Taylor Yard, Plaintiff fell and injured himself in the vicinity of the crossing adjacent to Switch 5. (Doc. 24, ¶¶ 13-15). Plaintiff asserts that it was snowing when he was driving to the Taylor Yard and that he arrived there at about 8:30 a.m. (Doc. 24-2 at 167). Plaintiff contends that when he arrived at the Taylor Yard the road leading to the yard was plowed, the yard itself had not been plowed, and that he saw no cinders on the road (Doc. 24-2 at 168).

Plaintiff testified further that, after sitting through a briefing, he and his workmate, Kenneth Kertesz, walked out into the yard and across the tracks to the area of Switch 5. (Doc. 1, ¶¶ 13-14; Doc. 24-2 at 177-80). After "throwing the switch" at Switch 5, Plaintiff testified that he walked to the crossing to protect vehicular traffic against entering the crossing, which was not

2

guarded by automatic gates, while the train approached. (Id.). While standing in the crossing, both of Plaintiff's feet slid forward and out from under him causing him to fall flat on his back. (Doc. 1, ¶¶ 14-15; Doc. 24-2 at 185-86 and 205-06).

Plaintiff alleges that the crossing area where he fell was plowed but still covered with snow and that the walking conditions were not good. (Doc. 24-2 at 178-79). Kenneth Kertesz's testimony also indicated the conditions in the yard were "less than optimum" and that there was snow on the ground and it was "icy in spots". (Doc. 24-3 at 18-19). Plaintiff testified further that the switch area near the crossing was not cleared out when he threw the switch adjacent to the crossing. (Id.). Plaintiff's testimony in this regard is corroborated by that of Ernie Nickelson, one of the employees whose job was to clean the switches. (Doc. 24-8 at 36-37).

On the morning of Plaintiff's accident, it had snowed heavily and both Martin Quinn, Supervisor in charge of the Taylor Yard, and Donald Kovaleski, one of Defendant's employees who was involved in the snow removal effort, testified that 10-12 inches of snow had fallen. (Doc. 24, ¶¶ 10-12; Doc. 24-5 at 18; Doc. 24-6 at 25). Donald Kovaleski's brother, Anthony Kovaleski, gave testimony regarding their procedure for clearing the Taylor Yard of snow after a snowstorm. (Doc. 24-7 at 14-15 and 21-22). Specifically, Anthony Kovaleski testified that he operates a front-end loader

3

(Doc. 24-7 at 14); that when he does the crossings he "backblades" them to get as much snow off them as he can (Id. At 15); that the front-end loader he operates is not equipped to spread salt or cinders (Id. At 21-22); that on the day of Plaintiff's accident he thinks that the snow removal had been done before the crew arrived (Doc. 24-7 at 35-36); and that he was unsure whether the cinders were down before the crew arrived (Id. At 36).[2] Another of Defendant's employees, Michael Radzwilla, testified that he thought that someone came out with salt and cinders after the accident occurred. (Doc. 24-4 at 42).

Plaintiff alleges that he tried to continue working after his fall but that the pain and numbness he was experiencing forced him to return to the Defendant's yard office. (Doc. 24, ¶ 16; Doc. 24-2 at 16-19). Upon returning to the yard office, Plaintiff called his Supervisor, Martin Quinn, who directed him to call 911 for an ambulance. (Doc. 24-2 at 18; Doc. 24-5 at 13). Plaintiff contends that the injuries suffered in the fall of February 21, 2010 have caused him pain and suffering, have required and will continue to require substantial medical care, and have caused him to lose income as well as curtailed his future earning capacity. (Doc. 1, ¶¶ 11-13).

---

[2] It is unclear from the excerpt of Anthony Kovaleski's deposition provided to the Court whether the "crew" alluded to by Mr. Kovaleski included the Plaintiff.

4

## II. Summary Judgment Standard.

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas., 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. Celotex Corp. V. Catreet, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof."

5

Id. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Id. At 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the non-moving party. Abramson v. William Patterson College of N.J., 260 F.3d 265, 267 (3d Cir. 2001) (citing Drinkwater v. Union Carbide Corp., 904 F.2d 853, 854 N.1 (3d Cir. 1990). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

In a FELA case, the standard to obtain a grant of summary judgment is even more stringent. The United States Supreme Court has held that "...a railroad worker may recover from his employee for an injury caused in whole or in part by a fellow worker, not because the employer is himself to blame, but because justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all

respects with sufficient care that his safety while doing his part will not be endangered. If this standard is not met and injury results, the worker is compensated in damages." Sinkler v. Missouri Pacific Railroad Company, 356 U.S. 326, 329 (1958). The Sinkler Court characterized FELA as "an avowed departure from the rules of the common law" and "a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety (citations omitted). (Id.).

The Third Circuit has held:

> Because a railway employer's duty is high and FELA provides for a most lenient causation inquiry, a court must be cautious in granting summary judgment. 'It is well established that the role of the jury is significantly greater in Jones Act and FELA cases than in common law negligence actions... .' By enacting FELA, Congress desired to 'secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions.'

Gottshall v. Consolidated Rail Corporation, 988 F.2d 355, 379 (3d. Cir. 1993); citing Hines v. Consolidated Rail Corporation, 926 F.2d 262, 269 (3d. Cir. 1991).

7

In the Third Circuit, the relevant test for determining whether summary judgment may appropriately be granted in a FELA case "...teaches that a trial court is justified in withdrawing such issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee." Pehowic v. Erie Lackawanna Railroad Company, 430 F.2d 697, 699-700 (3d. Cir. 1970); cited with approval in Eckert v. Aliquippa and Southern Railroad Company, 828 F.2d 183, 187 (3d. Cir. 1987).

III. **Discussion.**

Defendant's Motion for Summary Judgment is premised on a mischaracterization of Plaintiff's lawsuit. Specifically, Defendant contends that "Plaintiff's claim is that the mere existence of winter conditions in the area of the alleged accident somehow imposes liability on [the Defendant]." [3] (Doc. 22 at 12). Plaintiff's Complaint is, quite to the contrary, predicated on the theory that Defendant failed in its duty under FELA to provide Plaintiff with reasonably safe working conditions in numerous

---

[3] Defendant also asserts that the "hills and ridges" doctrine, a creature of Pennsylvania common law, insulates it against liability in this case. (Doc. 23 at 12-13). Because federal common law and not that of individual states governs negligence actions under FELA (see Urie v. Thompson, 337 U.S. 163 (1949)), and because the "hills and ridges" doctrine is inapplicable even in Pennsylvania to cases, like the instant case, in which human intervention in the form of ineffective snow removal is part of the context, (see Beck v. Holly Tree Homeowners Association, 689 F. Supp. 2d. 756, 762-63 (E.D. Pa. 2010) (citing Harvey v. Rouse, 901 A 2d. 523, 526-27 (Pa. Super. 2006)), we conclude that the "hills and ridges" doctrine is irrelevant here.

8

particulars. (Doc. 1 ¶ 10 (a) through ¶ 10 (h)). Succinctly put, Plaintiff alleges that Defendant did not do enough soon enough to afford him safe footing in his designated work area on the morning of February 21, 2010.

No fewer than seven depositions were taken in this case and, though the Court was not provided with these transcripts in their entirety, a "snowy" picture has emerged as to the conditions on the ground in the Taylor Yard when Plaintiff reported to work on the date in question.

With respect to how much snow had fallen by the time Plaintiff reported to work, different people provided different assessments. Martin Quinn testified that deep snow "about 10 inches deep" had fallen (Doc. 24-5 at 18); Donald Kovaleski testified that "it was around ten inches or so" (Doc. 24-6 at 25); and Kenneth Kertesz testified that "the conditions were less than optimum" and that it was "cold and icy with two to three inches of snow on the ground" (Doc. 24-3 at 18-20).

With respect to how much snow removal and cindering had been done by the time Plaintiff took his fall, accounts differed markedly. Plaintiff testified that the area had been plowed but that there was still snow on the ground (Doc. 24-2 at 178); Ernie Nickelson testified that he and his workmate had not started to do the switches before Plaintiff was injured (Doc. 24-8 at 36-37); Michael Radzwilla testified that, after the accident occurred, "I

9

imagine somebody came out to take care of it, salt and cinder, whatever they do." (Doc. 24-4 at 42); Donald Kovaleski testified that he saw Plaintiff sitting in a chair in the yard office after he came in to use the facility "after we got most of the work done" (Doc. 24-6 at 26); and Anthony Kovaleski provided nebulous testimony that could be interpreted to indicate that he was not sure whether the crossings had been cindered before the crew arrived. (Doc. 24-7 at 35-36). [4]

Anthony Kovaleski also testified about the procedure he follows when clearing snow in the Taylor Yard. He indicated that when he operates his "front-end loader" to clear the access road he uses his bucket as a plow; but when he does the crossings he "backblades" to get off as much snow as he can. (Doc. 24-7 at 14-15). This testimony could well cause a reasonable juror to conclude that the snow that remained on the crossing after Mr. Kovaleski "backbladed" it would be to some extent compressed by the weight of the blade and, thus, made more slippery than the loose snow that covered the crossing before he began his snow removal effort. Mr. Kovaleski also testified that his front-end loader is

---

[4] Defendant contends in its Reply Brief (Doc. 29 at 3-4) that certain testimony provided by Donald Kovaleski, Anthony Kovaleski, Ernie Nickelson, Robert Ossig, and Kenneth Kertesz combines to prove that "snow and ice removal was completed before Plaintiff and his track crew began work that day (February 21, 2011)." This testimony is in some respects supportive of Defendant's interpretation, but not so clear as to allow the Court to rely on it in the context of a summary judgment motion. Suffice it to say that the Court has read these excerpts and finds them to produce as many questions as answers about both the timing and effectiveness of Defendant's snow removal effort.

not equipped with an attachment to spread salt or cinders while he clears snow. This perhaps raises a jury question whether the snow removal equipment allocated for snow removal at the Taylor Yard was sufficient to satisfy the high duty of care the Defendant owed its workers under the FELA.

Considering all the foregoing factors, the Court simply cannot conclude that, as required by Pehowic, supra, and its progeny, there is a "zero probability" that employer negligence however slight, contributed to Plaintiff's injuries.

## IV. Conclusion.

The Court finds that even under the general standard for resolving a summary judgment motion, material factual disputes exist and credibility determinations must be made here that must be submitted for a jury's consideration. Under the more stringent standard applicable to a FELA case, this question in the instant case is not close. Accordingly, an Order will be issued contemporaneously with this Memorandum denying Defendant's Motion for Summary Judgment.

BY THE COURT

/s/ Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Judge

Dated: 1-27-14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY MCANDREW            :

    Plaintiff,            : Case No. 3:11-CV-1727

v.                          :

DELAWARE & HUDSON RAILWAY COMPANY
INC. d/b/a CP RAIL SYSTEM   : (Judge Richard P. Conaboy)

    Defendant.            :

---

**ORDER**

AND NOW, THIS 22nd DAY OF FEBRUARY, 2013, FOR THE REASONS EXPRESSED IN THE FORGOING MEMORANDUM, IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:

1. Defendant's Motion for Summary Judgment (Doc. 22) is denied.

BY THE COURT

_____
Honorable Richard P. Conaboy
United States District Court