IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY McANDREW, | : |
| Plaintiff, | : |
| v. | : 3:11-CV-01727 |
| | : (Judge Mariani) |
| DELAWARE & HUDSON RAILWAY CO., | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion for Judgment as a Matter of Law (Doc. 118), which was filed by the Defendant following a five-day jury trial in this Federal Employers Liability Act (FELA) action. For the reasons that follow, the Court will deny the Motion.

### II. Factual Background and Procedural History

Coming as it does after significant trial testimony, this Opinion is written primarily for the parties and will therefore discuss only those aspects of the case necessary to the resolution of the instant Motion. By way of brief background, Plaintiff Jeffrey McAndrew is a former conductor for Defendant Delaware & Hudson Railway, d/b/a CP Rail System. On February 21, 2010, while working at the railyard in Taylor, Pennsylvania, Mr. McAndrew slipped, fell, and sustained injuries. According to testimony at trial, snow had recently fallen and covered the ground on the date of injury. McAndrew testified that the snow had not been cleared when he fell and that only as he was being taken away in an ambulance after

his fall did he notice workers spreading cinders—an anti-skid agent—on the snow. There was also testimony that the metal studs in McAndrew's boots—which are designed to prevent slips and falls—had worn out and were not replaced. Finally, Plaintiff presented the testimony of John Allin, a snow removal expert, who opined on proper methods of snow and ice removal. Allin offered his opinion that the lack of appropriate snow-removal methods increased the likelihood of Plaintiff's fall.

After hearing all of the testimony and evidence, the jury returned a verdict holding Plaintiff McAndrew fifty-five percent negligent for his own injury and finding Defendant Delaware & Hudson forty-five percent negligent. (Jury Verdict, Doc. 115, at 3.) The jury found that Plaintiff suffered the equivalent of $627,288 in damages, which was apportioned among past and future loss of earnings and past and future pain and suffering. (*Id.* at 4.) The Court proportionately reduced damages to account for Plaintiff's contributory negligence. *See* 45 U.S.C. § 53 (authorizing diminution of damages in cases of contributory negligence). It then entered judgment in his favor for a total of $282,279.60. (*See* Judgment, Doc. 116, at 1-2.)

During trial, Defendant moved for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a). It properly renewed this Motion under the authority of Rule 50(b) after the Court entered judgment. In its renewed Motion, the Defendant argues that Plaintiff failed to show a causal connection between its alleged negligence in failing to properly clear its premises of snow and Plaintiff's injury from slipping and falling on that

same snow. (*See* Def.'s Br. in Supp. of Mot. for JMOL, Doc. 119, at 2.) Defendant admits that it would be possible to "argue that in the typical FELA slip and fall matter, the causal link between a railroad's alleged negligence and a slip and fall is within the realm of a jury's ordinary experience." (*Id.* at 12.) Nonetheless, it argues that the instant case "is not a typical slip and fall matter." (*Id.*) That is because (1) according to the Defendant, Plaintiff's snow removal expert testified "that regardless of how carefully one plows and applies anti-skid, the ground will still be slippery and that slips and falls are *inevitable*" and (2) Plaintiff was wearing studded boots to provide extra skid protection, which are unfamiliar to jurors and therefore can only be the subject of expert testimony. (*Id.*) Defendant argues that "[t]hese two issues take the case outside the realm of a typical juror's experience such that it was speculation for the jury to have found, absent expert testimony, that this accident was anything other than inevitable, and not the result of any negligence." (*Id.*)

In other words, the Defendant argues that snow, ice, and metal studs are so far outside jurors' experiences that the jury should be legally precluded from inferring a causal connection between them and the act of falling.

### III. Standard of Review

Under Federal Rule of Civil Procedure 50(a),

> [i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). Under Rule 50(b),

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). A renewed motion for judgment as a matter of law under Rule 50(b)

> should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (internal citations omitted). "[T]he court should review the record as a whole, [but] must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).

"[J]udgment as a matter of law should be granted sparingly . . . ." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004). Nonetheless, "more than a scintilla of evidence is needed to sustain a verdict. Accordingly, 'we will grant judgment as a matter of law where the record is critically deficient of the minimum quantum

of evidence in support of the verdict.'" *Id.* (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)) (internal alterations omitted).

## IV. Analysis

### a. Legal Background

FELA provides in relevant part that

> [e]very common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . track [or] roadbed . . . .

45 U.S.C. § 51.

> [W]hen Congress enacted FELA in 1908, its attention was focused primarily upon injuries and death resulting from accidents on interstate railroads. Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the "human overhead" of doing business from employees to their employers.

*Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S. Ct. 2396, 2403-04, 129 L. Ed. 2d 427 (1994) (internal citations and quotation marks omitted).

Thus, as the Supreme Court has noted, section 51's "language is as broad as could be framed." *Urie v. Thompson*, 337 U.S. 163, 181, 69 S. Ct. 1018, 1030, 93 L. Ed. 1282 (1949). "In order to further FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers." *Gottshall*, 512 U.S. at 542, 114 S. Ct. at 2404. In keeping with these principles, i.e., "[g]iven

5

the breadth of the phrase 'resulting in whole or in part from the railroad's negligence,' and Congress' 'humanitarian' and 'remedial goals,' [the Supreme Court has] recognized that, in comparison to tort litigation at common law, 'a relaxed standard of causation applies under FELA.'" *CSX Transp., Inc. v. McBride*, ___ U.S. ___, 131 S. Ct. 2630, 2636, 180 L. Ed. 2d 637 (2011) (quoting *Gotshall*, 512 U.S. at 542-43, 114 S. Ct. at 2404).

"Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S. Ct. 443, 448, 1 L. Ed. 2d 493 (1957).

> Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities.

*Id.* at 506-07, 77 S. Ct. at 448-49. The *Rogers* Court further elaborated that when disputable causation issues arise in FELA cases, even if "the jury could properly have reached [one] conclusion," if "the probative facts also supported with reason [a contrary] verdict . . . , the decision was exclusively for the jury to make." *Id.* at 504, 77 S. Ct. at 447. When "uncertainty as to the fact arises . . . in that circumstance not the court, but the jury, was the tribunal to determine the fact." *Id.*

6

In light of the fact that our inquiry is limited to determining whether the facts justify "with reason" the jury's finding that the employer's negligence "played any part at all" in the injury, the Court cannot agree that the jury erred in attributing a causal connection between a negligent lack of snow removal and Plaintiff subsequently slipping and falling on that same snow.

### b. Trial Evidence and Testimony

Plaintiff presented a great deal of evidence at trial that the jury could permissibly use to infer causation. The Defendant's own personal injury report from the date of the accident provides this description: "Employee while walking on crossing Depot Street within Taylor yard slipped on plowed snoe [sic] and fell on his buttocks." (See CP Pers. Inj. Rep., Pl.'s Ex. 1, at 1.) In providing an answer to the query "Describe any contributing factors," the report states "Snow on crossing." (Id.) The jury also received evidence from railway conductor Michael Radzwilla, who was present at the yard at the time of the accident, that "heavy snow" was present on the date in question. (See, e.g., Statement of Michael Radzwilla, Pl.'s Ex. 8, at 1.) Mr. Radzwilla provided a written statement which states that Plaintiff "informed me he fell on ice at crosswalk" and that, though Plaintiff "appeared fine" to Radzwilla, he "did show the area he fell and the back of his pants that were wet from the fall." (Id.)

Moreover, the jury heard testimony and evidence that despite the presence of snow, the Defendant did not take safety precautions until after Plaintiff's accident. An injury report by Plaintiff's supervisor indicates that the "site inspection showed crossing was plowed and

7

cindered at 1100 hrs," but also that the incident occurred hours earlier, at "8:00 EST." (CP Inj. Rep. – Supervisor, Pl.'s Ex. 3, at 1, 2.) This latter claim is consistent with Plaintiff's trial testimony, wherein he stated that it was not until he lay in an ambulance on his way to the hospital that he saw the Defendant's agents spreading cinders for anti-skid purposes.[1] (*See* Jeffrey McAndrew Trial Test., Feb. 18, 2014, Doc. 100, at 68:9-14.) It is also consistent with the expert testimony of John Allin, who opined that "[f]rom the three accident reports, the description was that the area was snow covered," while, at the same time, "there was no evidence anything had been put down in order to increase traction or alleviate any ice buildup." (Allin Trial Test. at 22:19-24, 23:4-6.) He added that "[m]y experience with accident reports of this nature is had there been any material on the surface, it would have been noted in the accident reports." (*Id.* at 22:24-23:1.)[2]

Aside from this factual testimony, the jury also heard Mr. Allin's expert opinions. He provided the following opinions on the adequacy of Defendant's snow removal efforts during an exchange with Plaintiff's counsel:

> Q. Now, based on your review of the documents, the depositions provided to you, do you have an opinion within a reasonable degree of technical certainty and probability about whether the Delaware and Hudson doing business as C.P. Rail breached any standard of care or generally accepted practices of a commercial property owner on February 21, 2011?

---

[1] Plaintiff's expert John Allin opined that cinders can be used as a snow-removal agent, though they are inferior to other alternatives. (John Allin Trial Test., Feb. 17, 2014, Doc. 94, at 19:2-17.)
[2] Defendant challenges the factual testimony that no cinders had been laid at the time of Plaintiff's accident. (Def.'s Reply Br. in Supp. of Mot. for JMOL, Doc. 125, at 5.) However, sufficient evidence existed for the jury to side with the Plaintiff on this issue, even if others could hypothetically disagree.

A. Based on the information provided to me, I do not believe that any traction material was laid. There's no evidence of it. And that in and of itself would have breached all standards of care when it comes to snow and ice management professionals who address unsafe conditions on any site.

Q. Do you have an opinion as to whether there was a proper snow response plan in place at Taylor?

A. Based on the evidence supplied to me, there was not.

Q. Do you have an opinion in—the same question as before within a reasonable degree of technical probability and certainty if C.P. failed to provide customary and adequate training of those tasks providing snow and ice management services at the site?

A. My opinion there was none.

Q. Do you have an opinion as to the supervision and control of the snow removal workers at the site on February 21, 2011?

A. From the information provided to me it does not appear there was any supervision of those two individuals and that they were left to their own devices based on prior work that they had done there.

Q. Okay. Same question regarding your opinions within a reasonable degree of technical certainty, do you have an opinion as to whether C.P. properly followed generally accepted practices with regards to proper utilization of deicing materials on the crossing area?

A. In my opinion, they did not. . . .

Q. Do you have an opinion based on the information you just provided us as to whether the conditions you've testified to increased the risk of harm to Mr. McAndrew on February 21, 2011?

A. Most definitely.

(*Id.* at 24:4-25:10, 25:25-26:4.) As discussed, Mr. Allin's opinions were based on the

incident reports and the testimony of the other witnesses in this case, many of which the

9

jury also had the opportunity to review. And though Defendant has repeatedly challenged the bases of Allin's expert testimony, (see, e.g., Mot. in Limine, Doc. 30), the Court has already considered these issues and found him qualified to offer opinions under Federal Rule of Evidence 702, (see Mem. Op., Mar. 4, 2013, Doc. 45, at 7 (Conaboy, J.)). In so doing, the Court held that Allin's "review of the Incident Reports and relevant depositions in this matter" meant that his opinions were "based on sufficient facts or data" and that "his anticipated testimony will be the product of reliable principles" which would be applied to the facts of this case. (Id.) Though the jury was not required to accept Allin's opinions as true, it was certainly permitted to do so if it found them persuasive, given the Court's threshold reliability determinations.

Moreover, even if the jury completely discounted Allin's expertise, there would still be sufficient evidence to return the verdict that it did. While Allin's testimony might be helpful for the jury to evaluate the adequacy of Defendant's snow-removal efforts, the jury nonetheless had evidence that snow had fallen on the ground, that Plaintiff slipped and fell on that snow, and that Defendant did not make an effort to apply anti-skid to the area until after Plaintiff's fall. Certainly, these elementary facts could be—but are not required to be—sufficient to elicit the conclusion that the Defendant failed to adequately clear snow, that this omission caused Plaintiff's harm, and that such omission was wrongful.

Indeed, at the most basic level, jurors can be expected to understand that snow is slippery. They can be expected to understand that a person is more likely to slip on snow

than on a dry surface. Concomitantly, they can be expected to understand that there is a causal connection between a failure to clear snow and a person's slip and fall and, therefore, that the failure to properly remove snow may negligently increase the Plaintiff's risk of harm. These conclusions are not based on specialized or scientific knowledge that requires particular expertise. Everyone—especially those living in cold climates like northeastern Pennsylvania—can be expected to know the differences between and relative risks presented by snow-covered ground and bare ground.

### c. Defendant's Arguments

#### i. "Slips and Falls Are Inevitable"

Defendant's arguments to the contrary are unconvincing. First, Defendant makes much of its interpretation of John Allin's testimony wherein Allin supposedly claimed that slipping and falling is inevitable, regardless of what precautions are taken. (*See, e.g.*, Doc. 119 at 4, 9-10.) Defendant argues that this statement takes "the case outside the realm of a typical juror's experience such that it was *speculation* for the jury to have found, absent expert testimony that the accident was anything other than inevitable." (*Id.* at 12.)

At the outset, the Court notes that this argument is inconsistent with Defendant's other statements on the weight of Allin's testimony. That is, in other portions of its Brief, Defendant emphasizes Allin's "lack of relevant background, education, and expertise," (*id.* at 5-6), and argues that this lack of background, education, and expertise means that he "had grossly insufficient factual foundation, to testify as to causation," (*id.* at 12). When it

11

comes to "inevitability," however, Defendant suddenly reverses positions and appears argue that the jury was required to accept as true the opinion that it attributes to Allin, notwithstanding its previous protestations that he was unqualified to offer expert testimony at all.

Neither position is correct. The Court has already found, for reasons discussed in a separate Opinion, that Allin is qualified to offer expert testimony. (*See generally* Doc. 45.) But the Court having so found, it is now the jury's prerogative to accept or reject whatever portion of his testimony it sees fit. Even if Allin claimed that slips and falls are equally inevitable regardless of precautions taken, the jury was not required to believe him, especially if this statement—which Defendant interprets to deny any causal link between snow removal and likelihood of harm—contradicts jurors' own knowledge and experience.

The matter can, however, be resolved at a more fundamental level. That is, regardless of what weight the jury should accord Allin's testimony, there is no reason to accept Defendant's interpretation of that testimony as the only permissible one; indeed, there are strong justifications for rejecting it as mischaracterization. Allin offered the opinion at issue during a line of questioning concerning an article he had written for *Snow Magazine* in December 2009. Defense counsel inquired:

Q. [C]ould you read for the jury the title of the article, sir?

A. "Slip and fall and you."

Q. And below that?

> A. "Being sucked into the quagmire of a slip and fall claim is inevitable, the best defense, be prepared."
>
> Q. And is it your opinion, sir, that slip and fall claims are inevitable?
>
> A. Oh yeah, it is inevitable.

(Allin Test., Doc. 94, at 30:19-31:2.)

A reading of the article—which was admitted into evidence in its entirety, (*id.* at 31:3-24)—indicates that Allin probably did not mean the word "inevitable" to obliterate any causal connection between snow removal and slipping and falling.

First, the entire purpose of his article is to discuss strategies for limiting snow-removal contractors' liability in slip and fall cases. Thus, Allin writes that "if you can adequately document your activities, can prove you were not negligent, and educate your lawyer about your business, then you have a much better chance to lower the settlement payout to a size whereby you are not considered a liability to your insurance carrier." (John Allin, *Slip & Fall & You*, SNOW MAGAZINE, Def.'s Ex. 65, at 26.) He also writes that "[s]avvy investigations during the course of the discovery process will request . . . documentation to determine if your activities on the site were appropriate and sensible" and that discovery will raise such issues as "Was the material applied appropriate for the conditions at the time? . . . Are your people properly trained? . . . Did you use the appropriate amount of material for the conditions at the site?" (*Id.* at 20.) Clearly, to even raise these concerns is to implicitly state that there is a connection between a snow-removal worker's actions and the likelihood of people being negligently injured on snow. Otherwise, there would be no reason, e.g., to

13

"prove you were not negligent" or to apply appropriate material for the conditions of the time if the same outcomes will inevitably occur regardless of a contractor's actions. Therefore, a more reasonable interpretation of Allin's testimony in light of his published work might ascribe to him the opinion that, while slip and fall *claims* are inevitable, contractors can adopt reasonable standards of care that eliminate their own responsibility for the claims that will "inevitably" arise. If the jury followed this interpretation, it may have found that Allin does indeed believe that there is a causal connection between snow removal efforts and slip and fall claims, in that his entire article is premised on the belief that the difference between successfully and unsuccessfully defending against a negligence claim will depend on the standard of care that a contractor voluntarily adopted. The jury may well have found that Defendant's contrary interpretation not only goes against Allin's own written statements in the *Snow Magazine* article, but also against a common-sense understanding that people are more likely to slip on snow-covered land than on bare land, and that land possessors can and should respond to snowfall accordingly.

If the jury so concluded, then it had adequate evidence (as summarized above) to conclude that Defendant breached its duty of care in this case. It is then a short inferential step to conclude Defendant's failure to properly remove snow on its own property caused Plaintiff to slip and fall.

### ii. Testimony on Studded Boots

Defendant's argument on studded boots is equally unavailing. Defendant argues that, because "Plaintiff was wearing specialized equipment not common to everyday juror experience (studded over-boots)," the design and purpose of which were "to reduce the likelihood of the very accident that was alleged to have occurred," expert testimony was necessary assess to what extent the studded boots affected the accident. (Doc. 119 at 3.) Defendant further emphasizes that John Allin is not a boot expert, so that the jury lacked proper expert guidance on this issue. (*See id.* at 5-6 (quoting Allin Test. at 11:13-14 ("You can ask me all the questions you want about boots, I'll tell you the same thing. I'm not an expert at boots.")).) Thus:

> [b]ecause Mr. Allin professed *no knowledge whatsoever* of the supplemental traction provided by studded over-boots, he was not capable of comparing that supplemental traction to the traction provided by salt, cinders or anti-skid material. In other words, *he was unable to opine whether the supplemental traction provided by Plaintiff's studded over-boots completely overwhelmed any alleged negligence by the D&H for failing to apply salt, cinders or anti-skid.*

(*Id.* at 5.) Defendant analogizes this to a hypothetical case of an employee whose pants fall down:

> When an employer provides both a belt and suspenders, the failure of only one or the other cannot provide a causal link to an employee's pants falling down, particularly when an expert has testified that the pants may fall down regardless of a belt or suspenders.

(*Id.*)

15

The Court rejects every step of this argument. First, to the extent that it relies on a characterization of Allin's "inevitability" testimony which, as discussed above, the jury was not required to accept—and which, indeed, appears facially unreasonable—the argument is misplaced.

Second, the Court does not believe that the "supplemental traction" provided by studded boots goes beyond jurors' comprehension such that it would require expert testimony. The concept that metal studs can provide additional traction is readily accessible to laypeople; it relies on no specialized, technical, or scientific expertise. The jury, as finder of fact, was perfectly equipped to evaluate the relative wear of Plaintiff's boots, the traction that it believed such boots would provide, and how the traction that they supplied affected Plaintiff's likelihood of harm on snow-covered ground. These are all classic factual determinations that are reserved to the jury under our system of jurisprudence generally and under FELA particularly, the latter of which accords the jury a heightened role as finder of fact. *Cf. Hines v. Consol. Rail Corp.*, 926 F.2d 262, 269 (3d Cir. 1991) ("By enacting FELA, Congress desired to 'secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions.'") (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 371 (5th Cir. 1969)).

Third and finally, the Court sees no basis to find any reasonable analogy between Defendant's belt-and-suspenders argument and the facts of this slip-and-fall case, which

16

involves abundant evidence that no snow removal had occurred in the area that Plaintiff slipped and fell.

Indeed, to the extent that Defendant's analogy attempts to argue that, when two or more factors may contribute to the likelihood of an accident, the jury is legally unable to attribute causation, such argument is baseless. Plaintiff may indeed have been less likely to fall if he were wearing properly studded boots than he would be in the worn-down ones that he actually wore. But it is still reasonable to conclude that, *ceteris paribus*, failing to clear snow will make the area more dangerous than it would be if the snow were removed, regardless of the boots used. Clearly, a person in studded boots is at more danger of falling on snow-covered ground than he would be on bare ground. Of course, the jury could also conclude that snow removal in a railyard where employees must wear studded boots should be held to a more lenient standard of care than in a railyard where employees were not required to wear studded boots, or that the real source of negligence in this case was the failure to replace worn-out boots and not the failure to clear snow.[3] These, however, are simply questions of contributory negligence that fall well within the jury's purview under FELA. *See* 45 U.S.C. § 53 (authorizing a FELA jury to diminish the damages "to the amount of negligence attributable" to an injured employee). It is not the Court's prerogative to

---

[3] Even if the jury found the latter, it is unclear what verdict would follow. Sufficient testimony was presented at trial to support the conclusions either that *Defendant* was negligent in failing to promptly supply new boots or that *Plaintiff* was negligent in failing to promptly demand new boots. Therefore, the Court does not know what to make of Defendant's emphasis on the existence of worn studs, (*see, e.g.*, Doc. 125 at 7), because the jury was free to interpret this factual information to Defendant's detriment just as much as it could interpret it to Defendant's benefit.

overturn those findings when they were supported "with reason" by the probative facts. Moreover, the fact that the jury apportioned the majority of liability to the Plaintiff indicates that it did consider these issues and made a reasonable determination of relative fault based on the evidence of record.

## V. Conclusion

For the foregoing reasons, Defendant's Renewed Motion for Judgment as a Matter of Law (Doc. 118) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge